JAMES TRIMBLE vs. WHITIN MACHINE WORKS.

Worcester.    October 6, 1898. — October 21, 1898.

Present: FIELD, C. J., HOLMES, KNOWLTON, MORTON, & BARKER, JJ.

*Personal Injuries — Master and Servant — Employers' Liability Act — Negligence — Action.*

An action for personal injuries sustained by the plaintiff, while helping to load a machine upon a car, by falling through the side doorway of the car, cannot be maintained on the ground that there was no gang-plank at that door, if, assuming that a gang-plank is a part of the " ways, works, or machinery" of the employer, within St. 1887, c. 270, there is nothing to show that he had not furnished a suitable gang-plank, and if, it being the duty either of the plaintiff and his fellow workmen to put the gang-plank in place, or of the defendant's foreman to see to it, there is nothing to show whether the sole or principal duty of the latter was that of superintendence, or whether it was a part of his duty to see that the gang-plank was in place while the men were loading the machine.

TORT, for personal injuries sustained by the plaintiff, while in the employ of the defendant, through the alleged negligence of the latter in not providing a gang-plank for use in loading machinery. The declaration contained three counts, two under the employers' liability act, St. 1887, c. 270, and one at common law.

Trial in the Superior Court, before *Bond*, J., who allowed a bill of exceptions, in substance as follows.

The plaintiff testified that previously to the accident he had been at work for fourteen months for the defendant loading machinery into cars ; that on the day of the accident he was engaged with five other men in loading a machine known as a " quiller " into a box car through the end door ; that this quiller was a machine eleven or twelve feet long, about five feet wide, and about five feet high, and weighing about 3,000 pounds ; that it was loaded on two trucks, one at the front of the machine and another at the rear, each truck consisting of two wheels and a handle ; and that the quiller rested upon an upright pin which held it upon the truck.

He further described the machine as follows :

" The quiller was top heavy and was not symmetrical and did not balance even. The greater part of the weight at the top

was on my side, so that the machine would easily tip towards me. We got it into the freight shed and around to the door, and the first part of it went in, and I was ordered to get my bar and balance the machine, and I got my bar and went along the side of the car, the same as though right in the centre, and it was just about eighteen inches. I do not believe there was eighteen inches to work between the car and the machine. Two of the men were right behind me on the side, and three of them on the forward part, and I was in the centre balancing the quiller with my bar. I had not the chance to turn round and watch, because it might come over up against the car and pin me there, and I was going along with it keeping it right. The car was about seven feet wide. When I was told by the foreman to pinch this along on the south side, I got my bar under it and threw my force as it was a pretty heavy machine, and I lifted on the machine like that; my bar slipped on the hard wood floor and the machine tipped towards me and the heft of the machine threw me back, and I stepped right back, and there was nothing left behind me but an open door; there was no gang-plank, and I went through that doorway on the side of the car down between the platform and the car and struck on two rails."

On cross-examination, the plaintiff further testified as follows :

" The shed is a covered shed and the cars run under, really a part of the building. The cars ran into the freight-house which was heated and warm, and lighted by arc lights at the other end and by movable incandescent lights which you could carry from one side to the other. One of these incandescent lights was taken into the car and hung generally on a nail driven in the side of the car out of the way of the machinery and of one's head. . The only way to take a light was through the side door. Mr. Cram gave orders to open the doors that morning. The doors were not always open in those cars. I did not open those doors, and no one of the six men opened them. Some one opened the side door. Whenever they loaded through the end doors they opened the doors on the platform side. They opened the end door and they kept the side door shut. They opened the side door for ventilation, but whenever they did, they put on a gang-plank. They always put a gang-plank at the side door

while loading at the end door. I did not know this door was open. Of course I was watching the machine. If I did know the side door was open, I thought they might protect it as they always did with the gang-plank. I did not have a chance to look round. I was working about fifteen or twenty minutes on the same side as this door and going along with my back to it; was balancing the machine right along and trying to move it a little bit towards the other side of the car, according to orders. Of course I knew the door was there, but I did not know the plank was off."

John C. Maloney testified that he was one of the men who were helping load this machine, and that he was working on the same side as that on which the plaintiff worked. His testimony in regard to the machine and location of the plaintiff in the car coincided with that of the plaintiff. He further testified: "We ran the quiller into the car and got abreast of the door. There was a space of twelve to eighteen inches between the machine and the side of the car where the plaintiff was. We got the machine into the middle of the car, and one man asked the foreman, 'Will we leave it down here?' Mr. Cram, the foreman, said, 'No, pinch it up to the south side of the car.' The plaintiff pinched the machine, and his bar slipped and the machine tipped over against him and threw him back. When he put his foot behind him there was no gang-plank and he fell. There always used to be a gang-plank at the side door when we loaded at the end."

On cross-examination, he testified: "They always opened the side door to that car when they loaded through the end door, so that they could get some air, as it is pretty close and stuffy when the car has been shut up all night. They always leave open those side doors. When loading through the end door they put a gang-plank at the end door for the purpose of taking the machinery in. There was always a gang-plank at the side door when it was open."

At the close of the evidence offered by the plaintiff, the judge directed the jury to return a verdict for the defendant; and the plaintiff alleged exceptions.

*J. W. Sheehan & L. Cutting*, for the plaintiff.

*W. S. B. Hopkins & F. B. Smith*, for the defendant.

MORTON, J.    We understand that the only defect complained of was the want of a gang-plank at the side door of the car, while the plaintiff was helping to load the machine.    If we assume, without deciding, that a gang-plank was a part of the " ways, works, or machinery," there is nothing to show that the defendant had not furnished a suitable gang-plank.    If the defendant furnished a suitable gang-plank, it was not bound to see that it was properly placed at the door while the men were putting the machine into the car.    It would have performed its duty in furnishing the gang-plank.    *Robinson* v. *Blake Manuf. Co.* 143 Mass. 528.    *Ashley* v. *Hart,* 147 Mass. 573.    *Thyng* v. *Fitchburg Railroad,* 156 Mass. 13.    *Carroll* v. *Western Union Telegraph Co.* 160 Mass. 152.    *Allen* v. *Smith Iron Co.* 160 Mass. 557. Under the circumstances indicated, the putting of the gang-plank in place was the work of the men themselves, or it belonged to some superintendent or foreman of the defendant to see to it. If it was the former, then it is clear that the defendant is not liable to the plaintiff for an injury occurring through the failure or neglect of the plaintiff or his fellow workmen to do something which he or they ought to have done.    Nobody is referred to in the exceptions as superintendent, and the only person who is referred to in them as a foreman is Cram.    But there is nothing to show whether his sole or principal duty was that of superintendence, or whether it was a part of his duty to see that the gang-plank was in place at the side door of the car while the men were loading the machine.    It does not even clearly appear that he was a foreman of the defendant, though perhaps that might be fairly presumed.    Therefore, even though we make in the plaintiff's favor the assumption which we have made, he fails on this branch of the case.

The result is that the exceptions must be overruled.

*So ordered.*